## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**ALLEGRA NETWORK LLC and**
**ALLEGRA HOLDINGS LLC,**

             **Plaintiffs,**

**v.**

**UNITED SIGN VENTURES, LLC,**
**GARY WARNECKE, and**
**KIRK SEAGER,**

             **Defendants.**

**Case No. 16-cv-12882**

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiffs Allegra Network LLC ("Allegra Network") and Allegra Holdings LLC ("Allegra Holdings") (collectively, "Allegra"), by and through their attorneys, and as and for their Complaint for Injunctive Relief against defendants United Sign Ventures, LLC ("USV"), Gary Warnecke ("Warnecke"), and Kirk Seager ("Seager"), state as follows:

## INTRODUCTION

1.    Allegra owns the "Signs Now" brand. Signs Now stores offer professional graphics solutions to businesses worldwide. For the past seven years defendants owned and operated a franchised Signs Now store in Orlando, Florida.

1

2.     The parties' relationship was governed by a written franchise agreement.  The franchise agreement granted defendants the right to use Allegra's trademarks, trade names, know-how, intellectual property, and proprietary and confidential information, and defendants benefited from the use of that property for years.  In return, defendants agreed that upon termination they would, among other things: (i) stop using and return to Allegra all of Allegra's property, (ii) not use all that they had learned as a Signs Now franchisee to compete with Allegra or its franchisees for two years, (iii) assign to Allegra all telephone and fax numbers associated with their Signs Now store, and remove all directory and online listings, websites, domains, and email addresses used in connection with their Signs Now store, and (iv) pay to Allegra all outstanding amounts due.

3.     Allegra terminated the franchise agreement for cause on May 9, 2016 after defendants failed to pay to Allegra amounts owed under the franchise agreement and under a promissory note.  In the notice of termination, Allegra reminded defendants of their post-termination obligations under the franchise agreement.

4.     On May 12, 2016, defendants informed Allegra that they had no intention of (i) complying with their noncompetition covenant, (ii) returning customer lists and artwork to Allegra (they claimed to have destroyed other materials they were required to return to Allegra), (iii) removing all directory and

online listings, websites, domains, and email addresses, and assigning to Allegra all telephone and fax numbers, associated with their former Signs Now store, and (iv) paying all outstanding amounts due to Allegra.  In fact, and despite termination of the franchise agreement, defendants are operating a competing signs business out of the same location as their former franchised Signs Now store and are using Allegra's name, trademarks, and confidential and proprietary material in operating that business.  Defendants also have not assigned all telephone and fax numbers associated with their former Signs Now store to Allegra, and have not removed all directory and online listings, websites, domains, and email addresses used in connection with their Signs Now store.

5.     Defendants' unlawful disregard of their contractual obligations is causing Allegra to suffer immediate and irreparable harm by, among other things, the pilfering of its know-how and property and impairment of its substantial goodwill and reputation.  Allegra has repeatedly requested that defendants honor their contractual obligations, but they refuse to comply with them.  For this reason, Allegra brings this action to enjoin defendants' trademark infringement and unfair competition, and to enforce defendants' noncompetition covenants and other post-termination obligations.

## PARTIES

6.      Plaintiff Allegra Network is a Michigan limited liability company with its principal place of business in Plymouth, Michigan.  None of its members is a citizen of Florida.

7.      Plaintiff Allegra Holdings is a Michigan limited liability company with its principal place of business in Plymouth, Michigan.  None of its members is a citizen of Florida.

8.      Defendant USV is a Florida limited liability company with its principal place of business in Orlando, Florida.  Neither it nor any of its members is a citizen of Michigan.

9.      Defendant Warnecke is a citizen and resident of Florida.

10.     Defendant Seager is a citizen and resident of Florida.

## JURISDICTION AND VENUE

11.     The Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.

12.     The Court also has original subject matter jurisdiction of this action under 28 U.S.C. § 1332(a)(1), in that this is a civil action where the matter in

4

controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States.

13.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district, and defendants consented, in writing, to venue in this judicial district.

## FACTUAL BACKGROUND

### The Franchise System

14.     Allegra Network is engaged in, among others, the highly-competitive business of developing and distributing professional graphics solutions to the general public through the Signs Now brand in this judicial district and throughout the United States and Canada.

15.     Allegra Network's professional graphics products and services are distributed throughout the United States through authorized franchised Signs Now stores operated pursuant to written franchise agreements with Allegra Network.

### The Signs Now Name and Trademarks

16.     To identify the source, origin, and sponsorship of its products and services, and to distinguish those products and services from those established, made, offered, and sold by others, Allegra Network and its authorized Signs Now franchisees have extensively used certain trademarks, service marks, trade names,

logos, emblems, and indicia of origin, including but not limited to the "Signs Now" mark (the "Signs Now Marks") in connection with the operation of authorized Signs Now stores.

17.     The Signs Now Marks are owned by Allegra Holdings.   Allegra Holdings licenses the Signs Now Marks to Allegra Network and Allegra Network has the full right and authority to use and to sublicense its franchisees' use of the Signs Now Marks.

18.     Pursuant to franchise agreements entered into by Allegra Network and its authorized franchisees, Allegra Network grants franchises to qualified persons to own and operate Signs Now stores, together with a limited license to use the Signs Now Marks in connection therewith, but only in such manner and at such locations as are expressly authorized by Allegra Network in the franchise agreements.

19.     The Signs Now Marks are registered on the Principal Register of the United States Patent and Trademark Office.   The registration of the Signs Now Marks continues in full force and effect.

20.     Allegra Holdings has given notice to the public of the registration of the Signs Now Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure that it and its authorized licensees remain the exclusive users of the Signs Now Marks.

21.     Allegra Network, Allegra Holdings, and their authorized franchisees and licensees have continuously used the Signs Now Marks in interstate commerce in connection with the promotion, sale, and franchising of Signs Now stores, and the promotion and sale of the products and services they offer throughout the United States, since the date of the Signs Now Marks' registration.

22.     Allegra Network, Allegra Holdings, and their authorized franchisees and licensees have extensively advertised and promoted the Signs Now Marks and the products and services they offer in association with those marks throughout the United States and through various media.  As a result of such efforts and the considerable money spent in connection with those efforts, the products and services offered by Allegra Network and its authorized franchisees under the Signs Now Marks have been met with widespread public approval and have established demand and goodwill among business customers and consumers throughout the United States.

### Defendants' Franchise Agreement and Guarantee

23.     On December 1, 2008, Allegra Network, as franchisor, entered into a written franchise agreement with Warnecke and his wife, Laima Warnecke, as franchisee, pursuant to which Allegra Network granted them the right to own and operate a Signs Now store in a location to be determined in accordance with certain specifications for a term of twenty years (the "Franchise Agreement").

7

24.    In February 2010, the Warneckes opened their Signs Now store at 1311 West Fairbanks Avenue, Orlando, Florida 32804 ("Store #471" or "Signs Now Store") with telephone number (407) 678-7446 and fax number (407) 599-7446.

25.    On November 22, 2010, Allegra Network, the Warneckes, and Seager executed an assignment and release pursuant to which Allegra Network consented to the assignment of the Franchise Agreement to USV, Warnecke and Seager agreed to be personally bound by the obligations in the Franchise Agreement, and Laima Warnecke was released from the Franchise Agreement.

26.    Also on November 22, 2010, Warnecke and Seager ("Guarantors") executed a guarantee and assumption of obligations guaranteeing USV's obligations under the Franchise Agreement and agreeing to be personally bound by, and jointly and severally liable for the breach of, each and every provision of the agreement (the "Guarantee").

27.    Defendants have enjoyed the full and complete benefit of the franchise granted to them under the Franchise Agreement for the past seven years.

28.    Allegra Network at all times fully performed all of its obligations under the Franchise Agreement.

## The Signs Now System and Defendants' Contractual Obligations

29.     Under the Franchise Agreement, Defendants agreed to pay Allegra Network a tiered monthly royalty fee based on a certain percentage of the Signs Now Store's gross sales, and a monthly marketing fee in an amount equal to two percent of the Signs Now Store's monthly gross sales.

30.     Defendants acknowledged and agreed that if the franchisee and its owners failed to pay amounts due to Allegra Network or its affiliates within ten days after delivery of notice that such amounts were overdue, Allegra Network would have the right to terminate the Franchise Agreement effective upon delivery of a written notice of termination.

31.     Defendants also acknowledged and agreed that, as a Signs Now franchisee, they would receive, and they in fact received, Allegra Network's trade secrets, confidential information, and know-how for use solely in connection with the operation of their Signs Now Store, and agreed to be bound by post-termination obligations, including confidentiality, nondisclosure, and noncompetition obligations.

32.     Allegra Network invested substantial time, effort, and expense in developing, testing, refining, and perfecting the trade secrets, confidential information, and know-how that comprise its proprietary operating systems for the

operation of Signs Now stores (the "Signs Now System"), none of which is available or accessible to, or known to or ascertainable by, competitors.

33.     The Signs Now System is critical to Allegra Network and its authorized franchisees' ability to operate their Signs Now stores and to maintain their competitive advantage in the highly competitive professional graphics solutions industry.

34.     Allegra Network disclosed to defendants the Signs Now System solely in their capacity as a Signs Now franchisee, and that disclosure afforded defendants a significant competitive advantage over their competitors.

35.     Allegra Network would be irreparably harmed were the Signs Now System, or any component of it, revealed to or used by a competitor, including defendants, in the unlawful operation of a competitive business.

36.     Defendants specifically agreed to not disclose any portion of the Signs Now System, and to use it and the Signs Now Marks solely in connection with the operation of their authorized Signs Now Store and only as expressly authorized under the Franchise Agreement.

37.     Defendants also explicitly agreed that during the term of the Franchise Agreement they would not engage in any similar business to Signs Now anywhere, and that for a two-year period following the agreement's termination they would

not engage in the same or similar business within ten miles of their Signs Now Store or within five miles of any other Signs Now store.

38.     The noncompetition covenant is designed and necessary to protect Allegra's intellectual property, including the Signs Now System, brand, goodwill, reputation, and the integrity of the Signs Now network of franchised locations.

39.     Additionally, defendants agreed that upon termination of the Franchise Agreement they would comply with the Franchise Agreement's post-termination obligations, including, in relevant part, to:

a.      pay all outstanding amounts due to Allegra Network or its affiliates within fifteen days after termination,

b.      immediately cease any and all use of any component of the Signs Now System and any of the Signs Now Marks,

c.      return to Allegra Network any and all information and material containing any component of the Signs Now System and any of the Signs Now Marks, or allowing Allegra Network to remove such information and material from the Signs Now Store,

d.      return to Allegra Network within ten days all customer lists and artwork, and

e.      assign to Allegra Network all telephone and fax numbers associated with the Signs Now Store and remove all directory and online listings,

websites, domains, and email addresses used in connection with the Signs Now Store.

40.     Defendants agreed that, in the event that they engaged in unauthorized use of the Signs Now Marks or violated their nondisclosure and noncompetition obligations, injunctive relief should issue to enjoin any further violations and that Allegra Network would be entitled to recover its costs and expenses, including attorneys' fees, incurred in enforcing defendants' obligations.

**Defendants' Breaches, Their Failure to Cure, and Termination of the Franchise Agreement**

41.     Since entering into the Franchise Agreement, defendants have repeatedly failed to pay amounts due and owing to Allegra Network for royalties and marketing fund fees and have also underreported sales on which royalties and marketing fund fees were due.

42.     On October 1, 2014, Allegra Network entered into a settlement and release agreement with USV and Guarantors in exchange for their payment of $23,000 to Allegra Network in satisfaction of their unpaid fees due and owing under the Franchise Agreement for the period of January 1, 2013 to July 31, 2014, by a secured promissory note.

43.     Effective October 1, 2014, USV, as debtor, entered into a secured promissory note with Allegra Network, as payee, in the principal amount of $23,000 plus interest accruing at the rate of 5.25% per annum (the "Promissory

Note"). The principal amount of the Promissory Note included royalty fees USV owed on sales it had failed to report or disclose to Allegra Network.

44.     Nevertheless, defendants' failure to pay Allegra Network royalties and marketing fund fees due under the Franchise Agreement, as well as amounts due under the Promissory Note continued.

45.     On April 25, 2016, Allegra Network sent defendants a notice of default informing them that they were in default of the Franchise Agreement for failure to pay royalties and marketing fund fees and amounts due under the Promissory Note. The notice asked defendants to pay all amounts due within ten days of receipt and informed them that failure to cure within that period would result in termination of the Franchise Agreement.

46.     Defendants failed to pay the amounts due and owing to Allegra Network within the cure period.

47.     Accordingly, on May 9, 2016, Allegra Network exercised its express right to terminate the Franchise Agreement pursuant to Sections 14.B(13) and 14.B(21) based on defendants' failure to pay amounts owed under the Franchise Agreement and Promissory Note after having been provided an opportunity to cure.

48.     Sections 14.B(13) and 14.B(21) of the Franchise Agreement specifically authorize Allegra Network to terminate effective upon delivery of

written notice of termination if either defendants failed to pay Allegra Network (or its affiliates) any amounts due and did not correct the failure within ten days after delivery of written notice of that failure, or defendants failed to comply with any other agreement with Allegra Network (or its affiliates) and did not correct such failure within the applicable cure period, if any.

49.    In its May 9, 2016 notice of termination, Allegra Network reminded defendants of their post-termination obligations under the Franchise Agreement and Guarantee, including their obligations to: (i) comply with their noncompetition covenant, (ii) pay Allegra Network all outstanding amounts within fifteen days, (iii) return to Allegra Network any and all information and material containing any component of the Signs Now System and any of the Signs Now Marks, or allowing Allegra Network to remove such information and material from the Signs Now Store, (iv) return to Allegra Network within ten days all customer lists and artwork, and (v) assign to Allegra Network all telephone and fax numbers associated with the Signs Now Store and remove all directory and online listings, websites, domains, and email addresses used in connection with the Signs Now Store.

**Defendants' Violations of Their Post-Termination Obligations**

50.    Despite the Franchise Agreement's termination, defendants have failed and refused to comply with their post-termination obligations, including the noncompetition covenant.

14

51.    On May 12, 2016, defendants informed Allegra that they had no intention of (i) complying with their noncompetition covenant, (ii) paying to Allegra Network all outstanding amounts due, (iii) returning customer lists and artwork to Allegra Network (they claimed to have destroyed other materials they were required to return to Allegra Network), and (iv) assigning to Allegra Network all telephone and fax numbers, and removing all directory and online listings, websites, domains, and email addresses, associated with their former Signs Now Store.

52.    Allegra Network has repeatedly asked that defendants honor their contractual obligations under the Franchise Agreement and Guarantee, but defendants have failed to and refuse to comply with them.

53.    Defendants in fact continue to operate a competing signs store at the same location as their former franchised Signs Now Store, offering the same products and services they previously offered as a Signs Now franchisee, and to use the Signs Now Marks and the Signs Now System in connection with their unlawful competing business.

54.    Defendants have failed to return all Allegra property and materials, including order worksheets bearing the Signs Now Marks and name, to Allegra Network and claim to have destroyed all of this property and materials.

15

55.     Defendants have also failed to assign the telephone and fax numbers associated with their former Signs Now Store to Allegra Network, and have not removed all directory and online listings, websites, domains, and email addresses used in connection with their store.

56.     Indeed, Defendants continue to use the Signs Now Marks and name on their Facebook pages (doing business as Impact Signs and Visual Impact Signs & Graphics) to highlight their former association with Allegra or to cause confusion as to their association with Allegra.

57.     Defendants' former Signs Now Store also continues to appear on directory and online listings and websites as a Signs Now business with the same telephone and fax numbers associated with their former Signs Now Store.

58.     Defendants are trading off of Allegra's goodwill and reputation and exploiting the Signs Now System and Signs Now Marks in connection with the operation of their unlawful competitive business.  Defendants are indicating to the public that their competing business offers the quality products and services the public associates with authentic Signs Now stores, which their business no longer is.

## Arbitration

59.     The Franchise Agreement and Guarantee each provide that the parties must, with limited exceptions, submit their claims or disputes to binding

16

arbitration.    One such exception is a request for injunctive relief relating to improper use of the Signs Now System or Signs Now Marks.

60.    Accordingly, in this action, Allegra seeks only the injunctive relief specifically requested in its prayer for relief to enjoin defendants' use of its Signs Now System and Signs Now Marks and to enforce defendants' covenant not to compete.

61.    Allegra is contemporaneously filing an arbitration demand seeking damages caused by defendants' breaches of the Franchise Agreement, Guarantee, and Promissory Note.

## COUNT I - TRADEMARK INFRINGEMENT

62.    Allegra repeats and realleges ¶¶ 1 through 61 of its complaint as and for this ¶ 62, as if fully set forth herein.

63.    Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of the Signs Now Marks and have caused and are likely to cause consumer confusion or mistake and deceive the public in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

64.    Defendants' wrongful acts were, and continue to be, knowing and willful, as evidenced by their complete disregard of Allegra's requests that they comply with their post-termination obligations and covenant not to compete.

17

65.     As a direct and proximate result of defendants' infringement, Allegra has suffered and, unless defendants' infringement is enjoined, will continue to suffer actual, substantial, and irreparable harm, including, without limitation, diminution in the value of the Signs Now Marks, diminution in the value of their goodwill and reputation, and incalculable lost revenues and profits.

66.     Allegra has no adequate remedy at law because the Signs Now Marks are unique and represent to the public the Allegra identity, reputation and goodwill, such that damages alone cannot fully compensate Allegra for defendants' misconduct.

67.     Unless enjoined by the Court, defendants will continue to use and to infringe the Signs Now Marks to Allegra's irreparable injury.  This threat of injury to Allegra's business, identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued use of the Signs Now Marks and to ameliorate and mitigate Allegra's injuries.

## COUNT II - UNFAIR COMPETITION

68.     Allegra repeats and realleges ¶¶ 1 through 61 of its complaint as and for this ¶ 68, as if fully set forth herein.

69.     Defendants' acts, practices, and conduct constitute unfair competition, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or mistake, to deceive others as to the affiliation,

connection, or association of the parties, and/or to misrepresent the nature, characteristic, qualities, or geographic origin of the parties' goods, services, and commercial activities, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

70.    Defendants' acts were, and continue to be, knowing and willful, as evidenced by their complete disregard of Allegra's requests that they comply with their post-termination obligations and covenant not to compete.

71.    As a direct and proximate result of defendants' unfair competition, Allegra has suffered and, unless defendants' unfair competition is enjoined, will continue to suffer actual, substantial, and irreparable harm, including, without limitation, diminution in the value of the Signs Now Marks and System, diminution in the value of and damage to their goodwill and reputation, loss of their competitive advantage, and incalculable lost revenues and profits.

72.    Allegra has no adequate remedy at law because the Signs Now Marks and System are unique, were developed at great expense and effort, and represent to the public Allegra's identity, reputation, and goodwill, such that damages alone cannot fully compensate Allegra for defendants' misconduct.

73.    Allegra Network also has no adequate remedy at law because the components of the Signs Now System are unique, were developed, tested, refined, and perfected at great expense and effort, and afford Allegra Network and its

authorized franchisees a competitive edge that is lost if defendants are permitted to continue to use them, none of which can be quantified and for which monetary damages alone cannot fully and completely compensate Allegra Network.

74.     Unless enjoined by the Court, defendants will continue to compete unfairly with Allegra to Allegra's irreparable injury.  This threat of injury to Allegra and Allegra's business, identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued unfair competition and to ameliorate and mitigate Allegra's injuries.

## COUNT III – BREACH OF CONTRACT: FRANCHISE AGREEMENT SPECIFIC PERFORMANCE

75.     Allegra Network repeats and realleges ¶¶ 1 through 61 of its complaint as and for this ¶ 75, as if fully set forth herein.

76.     Defendants' failure and refusal to comply with their post-termination obligations under the Franchise Agreement, including, without limitation, their noncompetition covenant and their obligations to not use or disclose the Signs Now System, to cease all use of the Signs Now Marks, to return to Allegra Network any and all information and material containing any component of the Signs Now System and any of the Signs Now Marks (including customer lists and artwork), to assign to Allegra Network all telephone and fax numbers associated with the Signs Now Store, and to remove all directory and online listings, websites,

domains, and email addresses used in connection with the Signs Now Store, constitutes material breaches of the Franchise Agreement.

77.     As a result of these ongoing breaches, Allegra Network has suffered and will continue to suffer actual, substantial, and irreparable harm, including without limitation, loss of customer goodwill and loyalty, franchise system instability, the inability to refranchise the territory formerly serviced by defendants' Signs Now Store, lost profits, diminution in the value of the Signs Now System, damage to Allegra Network's goodwill, and loss of competitive advantage.

78.     Allegra Network has no adequate remedy at law because the Signs Now System is unique, was developed at great expense and effort, and affords Allegra Network and its authorized franchisees a competitive edge that is lost if defendants are permitted to continue to use it, none of which can be quantified and for which monetary damages alone cannot fully and completely compensate Allegra Network.

79.     Absent injunctive relief enjoining defendants' misconduct and ordering specific performance of their post-termination obligations, defendants' material breaches will continue to Allegra Network's irreparable harm.

## COUNT IV – BREACH OF CONTRACT: GUARANTEE
## SPECIFIC PERFORMANCE

80.    Allegra Network repeats and realleges ¶¶ 1 through 61 as and for this ¶ 80 of its complaint as if fully set forth herein.

81.    Guarantors' failure and refusal to comply with the post-termination obligations under the Franchise Agreement, including, without limitation, their noncompetition covenant and their obligations to not use or disclose the Signs Now System, to cease all use of the Signs Now Marks, to return to Allegra Network any and all information and material containing any component of the Signs Now System and any of the Signs Now Marks (including customer lists and artwork), to assign to Allegra Network all telephone and fax numbers associated with the Signs Now Store, and to remove all directory and online listings, websites, domains, and email addresses used in connection with the Signs Now Store, constitutes material breaches of the Guarantee.

82.    As a result of Guarantors' ongoing breaches, Allegra Network has suffered and will continue to suffer actual, substantial, and irreparable damage, including, but not limited to, loss of customer goodwill and loyalty, franchise system instability, the inability to refranchise the territory formerly serviced by defendants' Signs Now Store, lost profits, diminution in the value of the Signs Now System, and loss of competitive advantage.

83.     Allegra Network has no adequate remedy at law because the Signs Now System is unique, was developed at great expense and effort, and affords Allegra Network and its authorized franchisees a competitive edge that is lost if Guarantors are permitted to continue to use it, none of which can be quantified and for which monetary damages alone cannot fully and completely compensate Allegra Network.

84.     Absent injunctive relief enjoining Guarantors' misconduct and ordering specific performance of their post-termination obligations, Guarantors' material breaches will continue to Allegra Network's irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Allegra Network and Allegra Holdings respectfully pray for the following relief against defendants, jointly and severally:

A.     A preliminary and permanent injunction enjoining defendants, and each of them and their respective agents, servants, and employees, and all persons in active concert or participation with them, from:

1.     Using the Signs Now Marks or any trademark, service mark, logo, or trade name that is confusingly similar to the Signs Now Marks;

2.  Otherwise infringing the Signs Now Marks or using any similar designation, alone or in combination with any other components;

3.  Passing off any products or services as those of Allegra Network, Allegra Holdings, or Allegra Network's authorized franchisees;

4.  Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their business, products, or services;

5.  Causing a likelihood of confusion or misunderstanding as to their affiliation, connection, or association with Allegra Network, Allegra Holdings, or Allegra Network's franchisees, or with any of their products or services; and

6.  Unfairly competing with Allegra Network, Allegra Holdings, or Allegra Network's franchisees, in any manner.

B.  A preliminary and permanent injunction directing defendants, and each of them and their respective agents, servants, and employees, and all persons in active concert or participation with them, to fully perform their post-termination obligations, including, without limitation, their obligations to:

1.      Not compete with Allegra in the manner required by the Franchise Agreement and Guarantee for two years from the entry of the Court's order;

2.      Cease any and all use or disclosure of any component of the Signs Now System and any of the Signs Now Marks;

3.      Return to Allegra Network any and all information and material, including customer lists and artwork, containing any component of the Signs Now System and any of the Signs Now Marks, or allow Allegra Network to remove such information and material from the Signs Now Store;

4.      Assign to Allegra Network all telephone and fax numbers associated with the former Signs Now Store and remove all directory and online listings, websites, domains, and email addresses used in connection with the former Signs Now Store.

C.      An order that defendants file with the Court and serve upon Allegra's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order and attaching documentation supporting their compliance;

D.     An award of the costs and expenses, including reasonable attorneys'
fees and costs, incurred by Allegra in connection with this action, as provided by
the Franchise Agreement and Guarantee; and

E.     Such other and further relief as the Court deems just and proper.

Dated:  August 5, 2016                 Respectfully submitted,

ALLEGRA NETWORK LLC and
ALLEGRA HOLDINGS LLC


By: /s/ Fredric A. Cohen
        One of their Attorneys

Fredric A. Cohen (IL #6198606)
Marlén Cortez Morris (IL #6291488)
CHENG COHEN LLC
311 N. Aberdeen Street, Suite 400
Chicago, IL 60607
(312) 243-1701
fredric.cohen@chengcohen.com
marlen.cortez@chengcohen.com

James M. McAskin (P72930)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 S. Old Woodward, Suite 400
Birmingham, Michigan 48009
(248) 971-1716
mcaskin@bwst-law.com

26